**Case No. 25-51009**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

Matthew Jones; Ysidro Renteria; William L. Jones Carr,
*Plaintiffs - Appellants*

v.

Amber M. King; Chris H. Busse; Brandon W. Jones,
*Defendants - Appellees*

---

On Appeal from the United States District Court for the
Western District of Texas, Pecos Division
Civil Action No. 4:22-cv-00030

---

# BRIEF OF APPELLEES

---

William Christian
Texas Bar No. 00735905
Daniela Peinado Welsh
Texas Bar No. 24127300
GRAVES, DOUGHERTY,
HEARON & MOODY, P.C.
401 Congress Ave., Suite 2700
Austin, TX 78701
Telephone: (512) 480-5600
Facsimile: (512) 480-5804
Email: wchristian@gdhm.com
Email: dwelsh@gdhm.com

**Counsel for Appellees Amber M. King,**
**Chris H. Busse, and Brandon W. Jones**

## CERTIFICATE OF INTERESTED PERSONS

No. 25-51009

*Matthew Jones, et al. v. Amber King, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

1. Matthew Jones, *Appellant*.

2. Davis & Santos PLLC
   Jason M. Davis
   Caroline Newman Small
   Hayley Ellison
   Jay Huling
   *Counsel for Appellant Jones*.

3. William L. Jones Carr, *Appellant*.

4. Wolf & Stallings PLLC
   John T. Wolf
   *Counsel for Appellant Carr*.

5. Ysidro Renteria, *Appellant*.

6. The Hunnicutt Law Group,
   J. Stephen Hunnicutt
   Timothy A. Robinson
   *Counsel for Appellant Renteria*.

7. Law Office of Trent Graham, PLLC,
   Trent Graham
   *Counsel for Appellant Renteria*.

8. Amber M. King, *Appellee*.

9. Chris H. Busse, *Appellee*.

10. Brandon W. Jones, *Appellee*.

11. Graves, Dougherty, Hearon & Moody, P.C.
    William Christian
    Daniela Peinado Welsh
    Mark A. Stahl
    *Counsel for Appellees King, Busse, and Jones.*

Dated: May 8, 2026.

*/s/William Christian*
Attorney of Record for
Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary because the final judgment is supported by both settled law and the law of the case as decided by this Court in the previous interlocutory appeal, reported at 148 F.4th 296.

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS .... 2

STATEMENT REGARDING ORAL ARGUMENT .... 4

TABLE OF AUTHORITIES .... 6

ISSUES PRESENTED .... 11

STATEMENT OF THE CASE .... 11

A. This Court's prior opinion in this case .... 11

B. Plaintiffs' allegations relevant to immunity .... 12

SUMMARY OF THE ARGUMENT .... 14

ARGUMENT .... 15

I. Standard of review .... 15

II. Judge King has judicial immunity from damage claims premised on her orders holding Plaintiffs in contempt .... 15

A. Judge King's contempt orders were judicial acts .... 18

B. Judge King did not act in the "complete absence of all jurisdiction" .... 25

III. Sheriff Busse and Constable Jones have immunity from damage claims premised on the contempt orders .... 26

A. Derivative judicial immunity applies because they were carrying out a facially valid court order .... 26

B. Alternatively, qualified immunity applies because Plaintiffs have not shown violation of a clearly established right .... 28

CONCLUSION .... 34

CERTIFICATE OF SERVICE .... 35

CERTIFICATE OF COMPLIANCE .... 35

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Adams v. McIlhany*,
764 F.2d 294 (5th Cir. 1985) ....................18, 19, 20–21, 22

*Antoine v. Byers & Anderson, Inc.*,
508 U.S. 429 (1993) ....................17–19

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ....................29

*Ballard v. Wall*,
413 F.3d 510 (5th Cir. 2005) ....................18

*Boyd v. Biggers*,
31 F.3d 279 (5th Cir. 1994) ....................17

*Bradley v. Fisher*,
80 U.S. 335 (1872) ....................17, 25

*Bush v. Rauch*,
38 F.3d 842 (6th Cir. 1994) ....................27

*Campbell v. City of San Antonio*,
43 F.3d 973 (5th Cir. 1995) ....................15

*Crawford-El v. Britton*,
523 U.S. 574 (1998) ....................29

*Daves v. Dallas Cnty.*,
22 F.4th 522 (5th Cir. 2022) (en banc) ....................19

*Davis v. Bayless*,
70 F.3d 367 (5th Cir. 1995) ....................25

*Davis v. Tarrant Cnty.*,
565 F.3d 214 (5th Cir. 2009) ....................18, 19, 20

## TABLE OF AUTHORITIES (Cont.)

CASES PAGE(S)

*Diaz v. Cantu*,
123 F.4th 736 (5th Cir. 2024) .......... 19

*Edmonson v. Leesville Concrete Co., Inc.*,
500 U.S. 614 (1991) .......... 20

*Engebretson v. Mahoney*,
724 F.3d 1034 (9th Cir. 2013) .......... 27

*Francis v. Lyman*,
216 F.2d 583 (1st Cir. 1954) .......... 27

*Hale v. Townley*,
45 F.3d 914 (5th Cir. 1995) .......... 32–33

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) .......... 29

*Harper v. Merckle*,
638 F.2d 848 (5th Cir. Unit B 1981) .......... 22–23

*Holloway v. Walker*,
765 F.2d 517 (5th Cir. 1985) .......... 21

*Jones v. King*, 148 F.4th 296 (5th Cir. 2025), cert. denied,
No. 25-658, 2026 WL 642837 (U.S. Mar. 9, 2026) .... 4, 11, 15, 17, 19, 20, 24

*Lozman v. City of Riviera Beach, Fla.*,
585 U.S. 87 (2018) .......... 33

*Luttrell v. El Paso Cnty.*,
555 S.W.3d 812 (Tex. App.—El Paso 2018, no pet.) .......... 19

*Malina v. Gonzales*,
994 F.2d 1121 (5th Cir. 1993) .......... 22, 23–24

## TABLE OF AUTHORITIES (Cont.)

CASES PAGE(S)

*Martin v. Board of Cnty. Comm'rs*,
909 F.2d 402 (10th Cir. 1990) ....................31

*Martin v. Hendren*,
127 F.3d 720 (8th Cir. 1997) ....................26, 30. 31

*Mays v. Sudderth*,
97 F.3d 107 (5th Cir. 1996) ....................16, 26–28, 31–32

*McAlester v. Brown*,
469 F.2d 1280 (5th Cir. 1972) ....................18, 19

*McClendon v. City of Columbia*,
305 F.3d 314 (5th Cir. 2002) (en banc) ....................29

*Mendenhall v. Riser*,
213 F.3d 226 (5th Cir. 2000) ....................30–31

*Mireles v. Waco*,
502 U.S. 9 (1991) ....................17, 21, 22, 24–25

*Mitchell v. McBryde*,
944 F.2d 229 (5th Cir. 1991) ....................17

*Montoya v. FedEx Ground Package Sys., Inc.*,
614 F.3d 145 (5th Cir. 2010) ....................28–29

*Morrison v. Walker*,
704 Fed. App'x. 369 (5th Cir. 2017) ....................22, 33

*Morrow v. Meachum*,
917 F.3d 870 (5th Cir. 2019) ....................29

*Moss v. Kopp*,
559 F.3d 1155 (10th Cir. 2009) ....................27, 28

## TABLE OF AUTHORITIES (Cont.)

**CASES** **PAGE(S)**

*Patterson v. Von Riesen*,
999 F.2d 1235 (8th Cir. 1993) ....................................................................32

*Pierson v. Ray*,
386 U.S. 547 (1967) ....................................................................16, 17

*Pulliam v. Allen*,
466 U.S. 522 (1984) ....................................................................16

*Reichle v. Howards*,
566 U.S. 658 (2012) ....................................................................32

*Rios v. City of Del Rio*,
444 F.3d 417 (5th Cir. 2006) ....................................................................15

*Sleeman v. Brazoria Cnty.*,
78 F.3d 582 (5th Cir. 1996) ....................................................................23, 25–26

*Soc'y of Separationists, Inc. v. Herman*,
959 F.2d 1283 (5th Cir. 1992) (en banc) ....................................................................19

*Sparks v. Duval Cnty. Ranch Co., Inc.*,
604 F.2d 976 (5th Cir. 1979) (en banc) *aff'd sub nom.*
*Dennis v. Sparks*, 449 U.S. 24 (1980) ....................................................................21–22

*Stump v. Sparkman*,
435 U.S. 349 (1978) ....................................................................25

*Terwilliger v. Reyna*,
4 F.4th 270 (5th Cir. 2021) ....................................................................15

*Valdez v. City & Cnty. of Denver*,
878 F.2d 1285 (10th Cir. 1989) ....................................................................27, 30, 32

*Wernecke v. Garcia*,
591 F.3d 386 (5th Cir. 2009) ....................................................................32

## TABLE OF AUTHORITIES (Cont.)

**CASES** **PAGE(S)**

*Whitcraft v. Brown*,
570 F.3d 268 (5th Cir. 2009) ... 19

**CONSTITUTIONAL PROVISIONS**

Tex. Const. art. V, § 1-a ... 16

Tex. Const. art. V, § 18 ... 16

Tex. Const. art. V, § 24 ... 16

Tex. Const. art. XV, § 1 ... 16

Tex. Const. art. XV, § 8 ... 16

**STATUTES**

42 U.S.C. § 1983 ... 11

Tex. Gov't Code § 21.002 ... 25

**RULE**

Fed. R. Civ. P. 12 ... 12

## ISSUES PRESENTED

1. Is a judge immune under the doctrine of judicial immunity from civil damage claims arising from her issuance of orders of contempt?

2. Are government officials who participated in the execution of the judge's contempt orders immune from civil damage claims under either derivative judicial immunity or qualified immunity?

## STATEMENT OF THE CASE

This case involves claims for damages under 42 U.S.C. § 1983 against three officials of Loving County, Texas, in their individual capacities: Appellees Justice of the Peace Amber M. King, Constable Brandon W. Jones, and Sheriff Chris H. Busse. Plaintiffs/Appellants are three individuals who appeared before Judge King for a jury qualification proceeding in Loving County Justice Court, where Judge King disqualified them from jury service and held them in contempt.

### A. This Court's prior opinion in this case.

This is the second appeal of this case. In the first, this Court held that Judge King is entitled to judicial immunity for claims arising from her role in presiding over the jury qualification proceeding, reversing the district court's order to the contrary. *Jones v. King*, 148 F.4th 296, 300–04 (5th Cir. 2025), *cert. denied*, No. 25-658, 2026 WL 642837 (U.S. Mar. 9, 2026). This Court also held it had no interlocutory appellate jurisdiction to review the part of the district court's order granting Judge King immunity for issuing the contempt orders and to Constable Jones and Sheriff Busse for carrying

out her orders. *Id.* at 304–05. After entry of final judgment on remand, ROA.512, Plaintiffs bring this second appeal, contending that immunity should not bar their claims arising out of the contempt orders. ROA.513.

**B. Plaintiffs' allegations relevant to immunity.**

Because this appeal comes to this Court on a 12(b)(6) motion, ROA.263, it is framed by the following allegations as quoted from Plaintiffs' complaint. ROA.229. Judge King, the Justice of the Peace presiding over the Loving County Justice Court, "informed the Loving County clerk that she needed a jury for an upcoming trial." ROA.237. "Shortly thereafter, each Plaintiff received a summons to appear for jury selection in Justice of the Peace Court in Loving County." *Id.*

"[E]ach Plaintiff appeared as summoned to a meeting room (not a courtroom) in the annex of the Loving County Courthouse, along with several other individuals." ROA.238. "King began by addressing the assembled group. She first stated that any of those summoned who were not 'qualified jurors' could leave voluntarily. She then stated that any person who is found not to be a 'qualified juror' would be 'submitted to the district attorney for a [sic] aggravated perjury, a third-degree felony' and held in contempt of court. None of the 'jurors' left." ROA.239.

A deputy sheriff "asked the summoned jurors to stand, raise their right hand, and swear to tell the truth in response to King's questions regarding their 'service and qualifications as a juror.' Each person affirmed." *Id.* "King then proceeded to ask the assembled group a series of 'yes' or 'no'

questions:

- 'You are all 18 years of age or older?' The summoned jurors responded in unison, 'yes.'
- 'You are all citizens of this country and residents of this county?' The summoned jurors responded in unison, 'yes.'
- 'You are all able to read and write?' The summoned jurors responded in unison, 'yes.'
- 'You are currently eligible to become a qualified voter of this country under the Constitution and the laws of this state?' The summoned jurors responded in unison, 'yes.'
- 'You're not convicted of a misdemeanor theft or any felony?' The summoned jurors responded in unison, 'no.'
- 'You're not under indictment for legal accusations for misdemeanor theft or felony?' The summoned jurors responded in unison, 'no.'"

ROA.239–40.

"Immediately thereafter, King stated: '*So it's come to this Court's attention there are several jurors who are not residents of this county*. And you were given the opportunity to leave. Since you have not left you will be held in contempt of court, and you will be remanded to the Winkler County Jail for obstruction of the proper administration of justice as well as disrespect to the Court.'" ROA.240 (emphasis in original).

"King then identified each Plaintiff by name and ordered them to be arrested." *Id.* Judge King signed orders finding each Plaintiff in contempt. ROA.286. The orders "remanded" each Plaintiff to the Winkler County Jail. *Id.* Loving County Constable Brandon Jones and deputies of Sheriff Chris

Busse "escorted Plaintiffs out of the room and into an enjoining hallway, where Plaintiffs were ordered to empty their pockets." ROA.240. "Deputies then placed handcuffs on each Plaintiff and walked them to waiting vehicles." "The deputies drove Plaintiffs to the Winkler County jail[.]" *Id.* Plaintiffs were released after approximately five hours. *Id.*

## SUMMARY OF THE ARGUMENT

The final judgment should be affirmed, because immunity bars all damage claims arising out of Judge King's contempt orders.

First, judicial immunity shields Judge King from suit for her issuance of orders holding Plaintiffs in contempt. Contempt orders are quintessential judicial acts. As a Texas Justice of the Peace presiding over a jury qualification proceeding, Judge King did not act in the complete absence of all jurisdiction when she issued the contempt orders. She is therefore entitled to absolute immunity from Plaintiffs' claims for damages.

Second, Constable Jones and Sheriff Busse are entitled to either derivative judicial immunity or qualified immunity. When carrying out a judge's facially valid order, court officers such as Jones and Busse are absolutely immune from suits for damages. In the alternative, Plaintiffs have not demonstrated that Jones or Busse violated any clearly established right that could overcome the defense of qualified immunity.

## ARGUMENT

### I. Standard of review.

This Court reviews *de novo* a district court's ruling on a motion to dismiss on grounds of qualified or absolute immunity. *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021). The Plaintiffs bear the burden to demonstrate that immunity is inappropriate. *Id.* at 280. They must plead facts that, if true, "would overcome" a defense of immunity. *Id.* (quotation omitted).

In reviewing a motion to dismiss, this Court accepts "all well-pleaded facts as true" and views "those facts in the light most favorable to" Plaintiffs. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). But "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" premised on immunity. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (quotations omitted).

### II. Judge King has judicial immunity from damages claims premised on her orders holding Plaintiffs in contempt.

Plaintiffs seek damages for Judge King's actions taken as the Loving County Justice of the Peace presiding over the Loving County Justice Court. In a previous interlocutory appeal, this Court held that Judge King was immune for her role in presiding over a general assembly to qualify jurors in the Justice Court. *Jones v. King*, 148 F.4th 296, 299 (5th Cir. 2025), *cert. denied*, No. 25-658, 2026 WL 642837 (U.S. Mar. 9, 2026). This Court should

likewise affirm the district court's conclusion that Judge King is immune for issuing contempt orders during that jury qualification proceeding.

"It is well established that judges enjoy absolute immunity for judicial acts performed in judicial proceedings." *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996). "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . ." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967).

Affording a judge immunity for damages in a civil action does not leave a litigant or the public without remedy for a judge's misconduct. Judges may be removed from office through legal procedures in the constitution, such as impeachment or removal proceedings.[1] They may be disciplined by judicial conduct commissions. Tex. Const. art. V, § 1-a(6). In Texas and other states that conduct judicial elections, judges may be voted out of office. *See, e.g.*, *id.* § 18(a) (justices of the peace are elected to four-year terms of office). And in some circumstances, a private litigant may obtain prospective injunctive relief against a judge. *Pulliam v. Allen*, 466 U.S. 522, 542 (1984). But with respect to damages claims such as the ones brought here, judges are absolutely immune because "[a]lthough unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest

---

[1] *See, e.g.*, Tex. Const. art. XV, § 1 (Impeachment by House of Representatives); *id.* art. V, § 24 (Removal of County Officers); *id.* art. XV, § 8 (Removal of Judges by Governor on Address of Two-Thirds of Each House of Legislature).

importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1872)). Thus, "[t]he doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993).

Judicial immunity "applies even when the judge is accused of acting maliciously and corruptly." *Pierson,* 386 U.S. at 554; *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994) ("The alleged magnitude of the judge's errors or the mendacity of his acts is irrelevant."). "The fact that it is alleged that the judge acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity." *Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir. 1991).

Judicial immunity "is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12 (citations omitted); *see Jones*, 148 F.4th at 300 ("There are two—and only two—circumstances in which immunity yields: when a judge acts outside her judicial capacity, or when she acts in the clear absence of all jurisdiction." (footnotes omitted)).

### A. Judge King's contempt orders were judicial acts.

This Court has adopted a four-factor test to assist in determining if an act is "judicial in nature" for purposes of judicial immunity:

> (1) whether the precise act complained of is a normal judicial function;
>
> (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;
>
> (3) whether the controversy centered around a case pending before the court; and
>
> (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Davis v. Tarrant Cnty.*, 565 F.3d 214, 222 (5th Cir. 2009); *see also McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972). These four factors are "broadly construed in favor of immunity." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). That is, the four-factor test "should be construed in each case generously to the holder of the immunity and in the light of the policies underlying judicial immunity." *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985). "Of primary importance among these policies is the need for independent and disinterested judicial decision-making; immunity should not be denied where the denial carries the potential of raising more than a frivolous concern in the mind of some future judge that to take proper action might expose him to personal liability." *Id.*

The four factors "will often plainly indicate that immunity is available, [but] there are situations in which immunity must be afforded even though one or more of the [four] factors fails to obtain." *Id*. This Court has thus

recognized that "there are factual situations in which it makes sense not to consider" all four factors—for example, an act may be entitled to judicial immunity if it is "inextricably linked to" or "intertwined with" a normal judicial function. *Daves v. Dallas Cnty.*, 22 F.4th 522, 539 (5th Cir. 2022) (en banc) (quoting *Davis*, 565 F.3d at 222). Here, the four factors support the district court's conclusion that Judge King's contempt orders were judicial acts.

First—and foremost—"the precise act complained of, use of the contempt power, is a normal judicial function." *McAlester*, 469 F.2d at 1282; *see also Diaz v. Cantu*, 123 F.4th 736, 747 (5th Cir. 2024) ("The first factor favors judicial immunity because punishing for contempt is a normal judicial function."); *Adams,* 764 F.2d at 298 ("citing for contempt" is an act "normally performed by a judge."). In the prior appeal of this case, this Court emphasized that "the hallmark of a judicial act is 'the exercise [of] a discretionary judgment.'" *Jones*, 148 F.4th at 301 (quoting *Antoine*, 508 U.S. at 436). A judge's contempt order involves just such an exercise of discretionary judgment. *See, e.g.*, *Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009) ("We review contempt orders and sanctions imposed thereunder for an abuse of discretion."). Thus, courts have uniformly held that judges are absolutely immune from damage claims "for their actions in holding potential jurors in contempt." *Luttrell v. El Paso Cnty.*, 555 S.W.3d 812, 839 (Tex. App.—El Paso 2018, no pet.); *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (en banc).

Second, Judge King's contempt orders were issued in a courthouse annex used for the assembly of persons called for jury duty. ROA.238. In this case, this Court previously ruled that this location favors immunity under the second factor for consideration: "The proceeding took place in a courthouse annex—an appropriate adjunct space . . . ." *Jones*, 148 F.4th at 303; *see also Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 623 (1991) (noting that in response to a summons, prospective jurors "must report to juror lounges, assembly rooms, and courtrooms at the direction of the court and its officers").

Third, "the acts arose directly out of a visit to the judge in [her] official capacity." *Davis*, 565 F.3d at 222. As this Court held in the prior appeal, this factor favors immunity because Plaintiffs appeared before Judge King on a jury summons in her capacity as the presiding judge of the Loving County Justice Court. *Jones*, 148 F.4th at 303–04; ROA.237–38.

Last, the only factor that could arguably favor Plaintiffs is whether "the controversy centered around a case pending before the court." *Davis*, 565 F.3d at 222. This Court previously held that this factor "likely favors Plaintiffs" because "no specific case was identified" in the complaint—even though the complaint alleges the jury pool was called "for an upcoming trial." *Jones*, 148 F.4th at 304; *see* ROA.237 ("King informed the clerk that she needed a jury for an upcoming trial").

Construing these four factors "broadly" and "generously to the holder of the immunity," Judge King's contempt orders were judicial acts for

purposes of judicial immunity. *Adams*, 764 F.2d at 297 (5th Cir. 1985). Plaintiffs' contentions that the contempt orders were "non-judicial" rest on various allegations that Judge King acted in bad faith and with malice by planning in advance to conduct a "sham" proceeding to punish Plaintiffs. Br. 32–33. None of these allegations concerning Judge King's subjective intentions, however, are relevant to whether Judge King is entitled to judicial immunity. Because "judicial immunity is an immunity from suit, not just from ultimate assessment of damages," the defense "is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 11.

Accordingly, this Court has held that a judicial act is entitled to immunity, even if the judge is alleged to have acted with premeditated, criminal intent: "It is a well established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity." *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985). In *Holloway*, this Court rejected the proposition that "a judge's prior agreement to decide in favor of one party is not a judicial act" as "inconsistent with the fundamental policies underlying judicial immunity." *Id*. And sitting *en banc*, this Court held that a judge alleged to have accepted a bribe before issuing an injunction "was, of course, unqualifiedly immune from suit for the damages occasioned by

his judicial act." *Sparks v. Duval Cnty. Ranch Co., Inc.*, 604 F.2d 976, 978 (5th Cir. 1979) (en banc), *aff'd sub nom. Dennis v. Sparks*, 449 U.S. 24 (1980). For judicial immunity purposes, "[i]t is the Judge's actions alone, not intent, that we must consider." *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). Viewing Judge King's objective "actions alone," the contempt orders at issue were judicial acts. *Id.*

Plaintiffs rely on *Harper v. Merckle*, 638 F.2d 848 (5th Cir. Unit B 1981) for the proposition that a judge is "not always" immune when exercising contempt powers. Br. at 30. But *Harper* itself cautions that its holding does not extend beyond the specific facts of the case: "[O]ur holding is exceedingly narrow and is tailored to this, the rarest of factual settings." *Id.* at 859. This Court later explained that *Harper* "by its own terms, is virtually without precedential value" and acknowledged that the case "is inconsistent with" a number of Fifth Circuit and U.S. Supreme Court immunity cases. *Adams*, 764 F.2d at 298 n.4. Another case by this Court questioned whether *Harper* "survives" the subsequent U.S. Supreme Court's decision in *Mireles*, concluding that, at the least, *Harper* must be limited to its specific facts. *Morrison v. Walker*, 704 Fed. App'x. 369, 373 (5th Cir. 2017). If *Harper* applied to this case, this Court would be warranted in considering *en banc* whether to overrule it.

But *Harper* does not apply, because as the district court properly ruled, "*Harper*'s facts are not the facts here." ROA.462. The most obvious factual distinction between *Harper* and this case is that the plaintiff in *Harper*

appeared at the courthouse on his own volition looking for his ex-wife (a courthouse employee) to pay his child support, with no reasonable expectation that "judicial matters were at hand." 638 F.2d at 859. Here by contrast, the Plaintiffs appeared in response to a jury summons and so would reasonably expect "judicial matters were at hand." This Court has previously relied on just such a factual distinction to distinguish *Harper*. *See Sleeman v. Brazoria Cnty.*, 78 F.3d 582 (5th Cir. 1996) (as a witness appearing in response to a subpoena, "[Plaintiff] was fully aware that 'judicial matters were at hand,' even though he was not aware that one such judicial matter would focus on him."). The district court was therefore correct to reject application of *Harper* to this case, ROA.461–62, and this Court should as well.

Instead, this Court's decision in *Malina v. Gonzales*, 994 F.2d 1121 (5th Cir. 1993) demonstrates that the district court was correct to find Judge King immune for issuing the contempt orders. In *Malina*, one driver honked at another while passing a car on a highway. The driver of the other car happened to be a judge. Putting a flashing red light on his dash, the judge executed an illegal traffic stop of the driver; had a police officer later appear at the driver's home to tell the driver to appear in the judge's courtroom the next day; purported to charge the driver in court with multiple traffic violations; and then held the driver in contempt, sentencing him to five hours in jail. *Id.* at 1123. This Court held that while the judge was not immune for the traffic stop, the summons to court, or the traffic charges—all of which are the functions of law enforcement or prosecutors, not judges—the judge

was absolutely immune for the issuance of the contempt citation and sentence. *Id.* Because contempt is a judicial act, this Court held that "under no set of facts" could the driver overcome the judge's entitlement to immunity, despite the allegations of the judge's improper and vindictive conduct. *Id.* at 1125.

Plaintiffs attempt to distinguish *Malina* on two grounds. First, they argue that the contempt order in *Malina* occurred during a judicial hearing, whereas the juror qualification proceeding over which Judge King presided was "itself a nonjudicial act." Br. at 35. But this argument is foreclosed by this Court's prior decision in this case, which holds exactly the opposite: "We agree with the officials: presiding over the jury proceeding was a judicial act shielded by absolute judicial immunity." *Jones*, 148 F.4th at 299. Second, Plaintiffs assert that the judge in *Malina* based his contempt finding only on conduct that had occurred in the courtroom, whereas Judge King allegedly had decided to hold Plaintiffs in contempt beforehand. Br. at 35–36. But the driver in *Malina* did allege that the contempt order was a premeditated decision based on out-of-court conduct: "Malina argues . . . that he was not sentenced for his behavior within the courtroom, but that he was sentenced for what occurred on the highway." 994 F.2d at 1125. This Court nevertheless held that judicial immunity applied, because judicial acts such as contempt are entitled to absolute immunity regardless of the alleged subjective intentions of the judge. *See id.* ("It is important to note that 'judicial immunity is not overcome by allegations of bad faith or malice.'" (quoting *Mireles*, 502

U.S. at 11). The same analysis leads to the same result here: Judge King's contempt orders were judicial acts entitled to judicial immunity.

### B. Judge King did not act in the "complete absence of all jurisdiction."

The second exception to judicial immunity does not apply, because Judge King did not act "in the complete absence of all jurisdiction." *Mireles*, 592 U.S. at 12. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley*, 80 U.S. at 351). On this issue, "the proper inquiry is not whether the judge actually had jurisdiction, or even whether the court exceeded its jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power." *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995).

Here, the contempt orders were well within the scope of Judge King's power as the judge presiding over Loving County Justice Court. Section 21.002(c) of the Texas Government Code gives a judge the power to hold persons in contempt of a justice court. The orders signed by Judge King cite this statute. ROA.241. This Court has previously held that because "a judge in Texas may hold someone in his courtroom in contempt and sentence him to jail time, a fine, or both," a judge exercising this authority acts within his power, and not "in the clear absence of all jurisdiction." *Sleeman*, 78 F.3d at

582. It thus cannot be said that Judge King acted in the "complete absence of all jurisdiction." Plaintiffs do not appear to contend otherwise.

## III. Sheriff Busse and Constable Jones have immunity from damage claims premised on the contempt orders.

Under either the doctrine of derivative judicial immunity or qualified immunity, the district court properly dismissed all claims against Sheriff Busse and Constable Jones for their alleged role in carrying out Judge King's orders committing the Plaintiffs to custody. ROA.464–67.

### A. Derivative judicial immunity applies because they were carrying out a facially valid court order.

In *Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996), this Court held that judicial immunity extends to officials who carry out a judge's order: "an official acting within the scope of his authority is absolutely immune from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction." *Id.* at 113; *see also Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) ("A judge's absolute immunity extends to public officials for acts they are specifically required to do under court order or at a judge's direction." (quotations omitted)). This Court's holding in *Mays* controls here and dictates that Busse and Jones are entitled to derivative judicial immunity for claims premised on execution of a facially valid judicial order of contempt.

Busse and Jones' immunity for carrying out Judge King's orders flows from the judicial immunity afforded Judge King for entering the orders in the first place: "[I]t does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law." *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994). As another court put it, "it is simply unfair to spare the judges who give orders while punishing the officers who obey them." *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989).

Here, both Judge King's oral and written orders held Plaintiffs in contempt and remanded them to the Winkler County Jail. ROA.240 (oral order); ROA.286–91 (written orders). These orders are "facially valid." *See Engebretson v. Mahoney*, 724 F.3d 1034, 1041 (9th Cir. 2013) ("facially valid' means an order is 'fair and regular on [its] face'" (quoting *Francis v. Lyman*, 216 F.2d 583, 585 (1st Cir. 1954)); *Moss v. Kopp*, 559 F.3d 1155, 1165 (10th Cir. 2009) ("'facially valid' does not mean 'lawful,' and erroneous orders can be valid"). Court officers such as Busse and Jones are immune from damage claims for doing what a judge ordered be done.

Plaintiffs' contention that Busse and Jones are not immune because they "knew" the orders were invalid is without merit. Br. at 38. This Court rejected such an approach in *Mays*, holding that the sheriff in that case was immune for executing a writ of attachment, even though it was alleged that

he *knew* "there was no legal cause for the writ of attachment." 97 F.3d at 113. Consideration of an officer's alleged knowledge that an order was invalid would impermissibly require a court to look beyond the face of the order. "[A] narrow conception of facial validity would deprive the court of most of the benefit it derives from the existence of quasi-judicial immunity for officers carrying out its orders because the unhesitating execution of court orders is essential to the court's authority and ability to function, and state officers subject to litigation might neglect to execute these orders." *Moss*, 559 F.3d at 1165.

Accordingly, because Judge King is absolutely immune for entering the contempt orders, Busse and Jones are absolutely immune for their alleged role in executing those orders. All claims premised on those allegations were properly dismissed by the district court.

**B. Alternatively, qualified immunity applies because Plaintiffs have not shown violation of a clearly established right.**

Busse and Jones have qualified immunity for their alleged actions in executing the contempt orders, and this Court may therefore affirm dismissal of all claims premised on those allegations on this alternative basis.

In the trial court, Busse and Jones raised qualified immunity as an alternative ground for dismissal of the damages claims against them. ROA.274–75. Because the district ruled that they were entitled to derivative judicial immunity, it did not rule on these officials' qualified immunity defense. ROA.467. This Court may reach this issue, because this Court "may

affirm a district court's Rule 12(b)(6) dismissal on any grounds raised below and supported by the record." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010).

A public official is protected by qualified immunity from damage claims, absent a showing that the official violated a "constitutional right" that was "clearly established" at the time of the alleged misconduct. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). This is a "heavy burden," requiring Plaintiffs to identify "relevant precedent" that "has placed the constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). To do so, the constitutional question must be framed "with specificity and granularity" and must be firmly resolved by a court's holding, not dicta. *Id.* Also, the court's holding must be controlling precedent from the U.S. Supreme Court or this Court, or in the absence of directly controlling authority, a "consensus of cases of persuasive authority." *McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002) (en banc).

A reviewing court assessing qualified immunity must also focus only on the "objective reasonableness of the official's conduct" measured against clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). Thus, "a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

Under these standards, Plaintiffs have not met their burden to show Defendants violated any "clearly established right." No case holds that an officer taking a person into custody on a judge's direct order violates any constitutional right, whether under the First Amendment, Fourth Amendment, Fourteenth Amendment or otherwise; and Plaintiffs cite no such authority. To the contrary, courts consistently hold that officers are not liable for executing a judge's order, even if that order may be unlawful or even unconstitutional. "Because judges frequently encounter disruptive individuals in their courtrooms, exposing bailiffs and other court security officers to potential liability for acting on a judge's courtroom orders could breed a dangerous, even fatal, hesitation." *Martin*, 127 F.3d at 722. "Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. If losing parties were free to challenge the will of the court by threatening its officers with harassing litigation, the officers might neglect the execution of their sworn duties." *Valdez*, 878 F.2d at 1288 (citation omitted).

No case holds—much less "clearly establishes"—that a law enforcement officer violates the Fourth Amendment by taking a person into custody on the direct order of a judge who has remanded them to jail for contempt of court. Plaintiffs cite *Mendenhall v. Riser*, 213 F.3d 226 (5th Cir. 2000) for the general proposition that law enforcement officials are not immune if they "knew" an arrest was without probable cause. *Id.* at 230. But that case concerns an officer's procurement of an *arrest warrant* and does not

"clearly establish" that an officer's compliance with a judge's *direct order* violates the Fourth Amendment. *See Martin*, 127 F.3d at 722 (distinguishing the execution of a warrant from carrying out a judge's order: "[T]he officers in *Martin* were executing an arrest warrant away from the issuing judge's courtroom, but Hendren was carrying out a judicial command in the judge's courtroom and presence."). The only situation where a court has entertained the possibility of liability is when the officer is alleged to have exceeded the scope of the court's order by using excessive force. *See, e.g.*, *Martin v. Board of Cnty. Comm'rs*, 909 F.2d 402, 404–05 (10th Cir. 1990). Plaintiffs here have not alleged excessive force, or any deprivation of their constitutional rights based on the manner in which they were taken into custody.

Plaintiffs have also not identified binding precedent clearly establishing a violation of the Fourteenth. Plaintiffs focus on the alleged deficiencies in the procedure Judge King followed in issuing her contempt orders—*i.e.*, that she improperly ruled the Plaintiffs were in "direct contempt" rather than "constructive contempt," and she did not afford them adequate notice or opportunity to be heard before ordering them to jail. Br. at 43–45. But no case "clearly establishes" that a court officer violates due process by following a judge's order, whatever its alleged deficiencies. Authority from this Circuit and elsewhere instead holds that court officials should not be put in the position of parsing the legality of a judge's order. In *Mays*, for instance, this Court held that "an official charged with executing a facially valid court order has no choice but to do so." 97 F.3d at 113. This

Court rejected a requirement that an officer must "act as an appellate court evaluating the legality of a decision issued by a judge trained in the law and authorized to issue such orders." *Id.* at 114. In support, this Court cited the holdings of other circuits, concluding that it would be "obviously untenable" to require officers to "act as pseudo-appellate courts scrutinizing the orders of judges," *id*. at 113 (quoting *Valdez*, 878 F.2d at 1289), and that officials "should not be required to make the Hobson's choice between disobeying the court order or being haled into court to answer for damages." *Id.* (quoting *Patterson v. Von Riesen*, 999 F.2d 1235, 1240 (8th Cir. 1993)).

Plaintiffs have likewise not identified any authority showing that Busse or Jones violated a "clearly established right" under the First Amendment. Plaintiffs once again frame the issue far too broadly. They argue Busse and Jones are not entitled to qualified immunity "[b]ecause the right to be free from retaliatory arrest, with or without probable cause, is well established." Br. at 46. But the Supreme Court has expressly rejected the suggestion that "as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for his speech." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (quotations omitted). Instead, the Court has held that "[o]fficials should receive the protection of qualified immunity unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful." *Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009) (quotations omitted); *see, e.g.*, *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) ("This court holds that at

the time of the conduct at issue, the constitutional tort of retaliation against an individual for having filed and won a lawsuit was not so clearly established that a reasonable official would understand that actions taken with this intent violated the First Amendment.").

There is no such specific precedent clearly establishing that Busse and Jones violated the First Amendment. The case cited by Plaintiffs considered only the "narrow" issue of whether probable cause can defeat a First Amendment retaliation claim in the context of a citizen arrested at a City Council meeting following his filing of a lawsuit against the City. *Lozman v. City of Riviera Beach, Fla.*, 585 U.S. 87, 90 (2018). In contrast, in a case alleging a court officer had violated the First Amendment by removing someone from a hallway outside a courtroom on a judge's order, this Court rejected the argument that the law was clearly established: "[Plaintiff] Morrison cites no authority for the position that a bailiff or any officer acting in similar circumstances violates a person's constitutional rights. We thus conclude that Morrison failed to establish that any such law is clearly established." *Morrison*, 704 Fed. App'x. at 375. The same is true here.

Plaintiffs failed to plead facts sufficient to overcome the defense of qualified immunity. The district court's dismissal of claims against Constable Jones and Sheriff Busse premised on the contempt orders may be affirmed on that alternative basis.

## CONCLUSION

Appellees Amanda M. King, Brandon W. Jones, and Chris H. Busse respectfully request that this Court affirm the final judgment. Appellees pray for such other and further relief to which they may show themselves to be justly entitled.

Respectfully submitted,

By: *<u>/s/William Christian</u>*
William Christian
Texas Bar No. 00793505
wchristian@gdhm.com
Daniela Peinado Welsh
Texas Bar No. 24127300
dwelsh@gdhm.com

GRAVES, DOUGHERTY,
HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, TX 78701
Telephone: (512) 480-5600
Facsimile: (512) 480-5804
Email: wchristian@gdhm.com
Email: dwelsh@gdhm.com

**Counsel for Appellees Amber M. King, Chris H. Busse, and Brandon W. Jones**

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Fed. R. App. P. 25(b) and (c), on May 8, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/William Christian*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2, this document contains 5987 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in in Book Antiqua 14-point font, a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO Version 2604.

Dated: May 8, 2026.

*/s/William Christian*